**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

RECEIVED

MAR 13 2012

AT 8:30
WILLIAM T. WALSH
CLERK

|  |  |
|---|---|
| DBA DISTRIBUTION SERVICES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 11-3901 (JAP) |
| | ) |
| ALL SOURCE FREIGHT SOLUTIONS, INC. | ) **MEMORANDUM OPINION** |
| and SERVICE BY AIR, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**PISANO, Judge**

This matter comes before the Court upon two Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the first by defendant Service By Air, Inc. ("SBA") (DE 17), and the second by defendant All Source Freight Solutions ("ASFS") (DE 19). The plaintiff, DBA Distribution Services, Inc. ("DBA" or "Plaintiff") opposes both motions. (DE 25.) The Court has considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant both Motions to Dismiss.

## I.   BACKGROUND

DBA and ASFS entered into an Exclusive Sales Agreement (hereinafter "Agreement") in which ASFS agreed to become DBA's exclusive agent representing DBA in the sale and operation of freight in the Boston, Massachusetts area. (Complaint ¶¶ 7, 9.) The Agreement

commenced January 10, 2005 and ended on January 9, 2006, with automatic yearly renewals for successive one-year periods unless the parties provided 90 days written notice to the contrary. (*Id.* ¶ 7.) The parties have renewed the Agreement since the original term, and it remained in effect until January 9, 2012. (*Id.* ¶ 8.)

The terms of the Agreement require that ASFS "[p]rovide an active and industrious sales effort to the solicitation of outbound and inbound freight for DBA and in the name of DBA." (Agreement ¶ 2A; Ex. A to SBA's Motion to Dismiss; DE 17-2.)[1] As the agency relationship was exclusive, ASFS agreed that it would "not represent, during the term of [the] Agreement, any other individual, partnership, firm, company, or corporation engaged in the generation of Air Freight and or Ocean Freight." (*Id.* ¶ 5; Complaint ¶11.) Likewise, ASFS was to "represent DBA as an Exclusive Agent in the sale and operation of freight in the Boston, Ma. area." (Agreement ¶ 1.)

The terms also dictate whether and how a party can assign the Agreement. ASFS may assign the "contract to a new corporation which is 100% owned by Kevin E. Durkin and David L. Naman," the individuals who signed the Agreement on behalf of ASFS. (Agreement ¶ 12.) However, the Agreement provides that it "shall not be assigned by either party without first obtaining the written consent of the other party and shall not be assignable or transferable by operation of law." (*Id.* ¶ 16.)

The terms further provide how the parties may terminate the Agreement. (*See id.* ¶ 11.) First, either party may prevent the automatic renewal of the Agreement by providing written notice "on or before 90 days prior to the expiration." (*Id.*; Complaint ¶15.) Second, the

---

[1] Although Plaintiff extensively quotes and cites the Agreement throughout the Complaint, Plaintiff did not attach the Agreement to its Complaint. As the Court will further explain below, it is proper to consider this document in deciding the defendants' motions to dismiss as it is integral to and explicitly relied upon in the complaint. *See Winer Family Trust v. Queen*, 503 F.3d 319, 328-329 (3d Cir. 2007).

2

Agreement may "be terminated by either party in the event of a breach of any provision of the Agreement upon 30 days written notice to the other." (Agreement ¶ 11.)  The terminating party must provide "notice of said breach and the breaching party shall have 30 days from the receipt of the notice to cure said breach to avoid termination." (*Id.*)

On April 6, 2011, Radiant Logistics, Inc. ("Radiant") acquired DBA through a merger. (Radiant Form 8-K § 1.01, Ex. B to SBA's Motion to Dismiss, DE 17-3.)[2]  In its Form 8-K submitted to the Securities and Exchange Commission ("SEC"), Radiant reported the following:

> [Radiant] closed on a previously announced Agreement and Plan of Merger . . . pursuant to which [Radiant] acquired DBA Distribution Services, Inc ("DBA"), a privately held New Jersey corporation in a transaction valued at $12.0 million.  DBA operates under the trade name "Distribution by Air" and provides a full range of domestic and international transportation and logistics services across North America.  The shares of DBA were acquired by [Radiant] via a merger transaction pursuant to which DBA was merged into a newly-formed subsidiary of ours.

(*Id.*)  The Certificate of Merger was attached to Radiant's Form 8-K and lists the "constituent corporations" as DBA Distribution Services, Inc. and DBA Acquisition Corp.  (*Id.* at Exhibit 2.3 ¶ 1.)  Additionally, the Certificate of Merger provides that the "name of the surviving corporation is DBA Distribution Services, Inc., a New Jersey corporation." (*Id.* ¶ 3.)

ASFS thereafter "attempted to place DBA on notice of its intent to terminate the Agreement thirty days from May 31, 2011." (Complaint ¶ 14.)  Plaintiff, however, states that "ASFS is contractually obligated to continue to perform until at least January 9, 2012" because

---

[2] The Court takes judicial notice of the April 12, 2011 Securities and Exchange Commission 8-K Form filed by Radiant Logistics, Inc.  The Third Circuit has held that courts may "take judicial notice of properly-authenticated public disclosure documents filed with the SEC" because "the documents are required by law to be filed with the SEC, and no serious questions as to their authenticity can exist." *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (citation omitted). The Court also notes the unlikelihood of objection by Plaintiff given that Plaintiff attached the same Radiant 8-K form to its brief in opposition. (Ex. D to Falletta Cert., DE 28-1.)

"[n]o provision of the Exclusive Sales Agreement permits a thirty day termination."[3] (*Id.* ¶¶ 15, 16.) Plaintiff further alleges that since June 3, 2011, "ASFS has failed to perform and is in breach of the terms and conditions of the Exclusive Sales Agreement" and "has begun working with SBA in further breach." (*Id.* ¶¶ 17, 18.)

DBA sent notice to ASFS of its contractual obligations along with a demand to perform on June 13, 2011. (*Id.* ¶ 19.) In addition, DBA sent a letter to SBA demanding that SBA cease and desist working with ASFS, "including the moving of ASFS's shipments through SBA's system." (*Id.*) After no response to either letter, DBA filed the instant action on July 7, 2011 against ASFS and SBA. (DE 1.) The Complaint alleges (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; (4) tortious interference with contractual relations; and (5) tortious interference with prospective economic benefit. (*Id.*) SBA and ASFS filed Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on September 7, 2011. (DE 17, 19.) Plaintiff filed a brief in opposition on October 17, 2011. (DE 25.) SBA and ASFS filed reply briefs on November 4, 2011. (DE, 30, 31.)

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. The Supreme Court set

---

[3] Plaintiff's statement is plainly contradicted by the Agreement, which states in paragraph 11: "This Agreement may be terminated by either party in the event of a breach of any provision of the Agreement upon 30 days written notice to the other." (Agreement ¶ 11.) The Court is not bound by Plaintiff's statement otherwise. *Durant v. Horton*, No. 07-93, 2008 U.S. Dist. LEXIS 47648, at * 6 (D.N.J. June 18, 2008) ("If facts that are alleged to be true in a complaint are contradicted by facts that can be judicially noticed, the contradicted facts in the complaint are not to be deemed as true upon consideration of the motion to dismiss."); *see also* 5A Wright & Miller, Federal Practice and Procedure Civil 2d § 1364.

forth the standard for addressing a motion to dismiss pursuant to Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007).  The *Twombly* Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do[.]"  *Id.* at 555 (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that the standard of review for a motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]." (internal quotation marks omitted)).

Therefore, in order for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all allegations in the complaint are true (even if doubtful in fact) . . . ."  *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).  The Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

As a general rule, a court "may not consider matters extraneous to the pleadings" in determining whether the plaintiff states a claim for which relief may be granted.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  As an exception, however, a court can consider documents "integral to or explicitly relied upon in the complaint."  *Id.*  Additionally, courts may at any time take judicial notice of facts "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b), (d); *see also Tellabs, Inc. v. Makor*

5

*Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007) (finding that it is proper to take judicial

notice of facts when considering a motion to dismiss pursuant to Rule 12(b)(6)).

## III.   DISCUSSION[4]

### A.   Breach of Contract

DBA first claims it is entitled to damages for breach of contract because ASFS

terminated the Agreement and associated with SBA in violation of its covenant not to represent

any other company in the air and ocean freight business. (Complaint ¶ 24.)  To state a claim for

breach of contract, DBA must allege "(1) a contract between the parties; (2) a breach of that

contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its

own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

The main issues are whether the Agreement was assigned by operation of law, and if so,

whether the assignment violated the Agreement.  ASFS argues that the Agreement was assigned

when Radiant acquired DBA, and that because DBA did not obtain written consent for the

assignment, ASFS should prevail because DBA did not perform its own obligations under the

Agreement. (ASFS Br. at 4-5; DE 19-1.)  But DBA contends that it did not violate the

assignment clause because it remains the "party in interest" to the Agreement.  (DBA Br. at 18.)

To determine whether the Agreement was assigned by operation of law, the Court turns

to New Jersey's statute concerning the effect of a merger or consolidation.  The statute provides

that upon a merger or consolidation, "[a]ll real and personal property, tangible and intangible, of

every kind and description, belonging to each of the corporations so merged or consolidated,

---

[4] In deciding the Motions to Dismiss, the Court will apply New Jersey law.  The Agreement
provides that it "shall be interpreted and construed in accordance with the laws of the State of
New Jersey," (Agreement ¶ 15), and the parties applied New Jersey law in their briefing.

shall be vested in the surviving or new corporation without further act or deed." N.J. Stat. Ann. 14A:10-6(d).

As the parties point out, the New Jersey Supreme Court has not addressed whether the vesting of contract rights via a merger violates a no-assignment clause. But that question is analytically different from whether the contract was transferred in the first place. The New Jersey merger statute provides that the property belonging to each of the constituent corporations "*shall be vested* in the surviving or new corporation." *Id.* (emphasis added). *See also SQL Solutions, Inc. v. Oracle Corporation*, No. C-91-1079, 1991 U.S. Dist. LEXIS 21097, at *8-11 (N.D. Cal Dec. 18, 2991) (finding a transfer of rights under a license agreement as a result of a merger violated a no-assignment clause). Several courts have criticized the "metaphysical" notion that no assignment occurs based on a theory of "corporate continuity." *SQL Solutions, Inc.*, 1991 U.S. Dist. LEXIS 21097, at *11; *Koppers Coal & Transp. Co. v. United States*, 107 F.2d 706, 707-708 (3d Cir. 1939). Rather, when a company becomes a wholly-owned subsidiary, "a fundamental change in its form of ownership" occurs. *SQL Solutions, Inc.*, 1991 U.S. Dist. LEXIS, at *7.

In this case, Radiant's Form 8-K discloses that "shares of DBA were acquired by [Radiant] via a merger transaction pursuant to which DBA was merged into a newly-formed subsidiary of [Radiant's]." (Radiant Form 8-K § 1.01) The act of merger therefore caused the transfer of the Agreement by operation of law. That DBA was ultimately the surviving corporation is irrelevant.

Next, having determined an assignment occurred, the Court must address whether the assignment violated the Agreement. It is important to distinguish between generic no-assignment clauses and those that specifically prohibit assignments or transfers by operation of

7

law. For example, in *Professional Buyer's Guild, LLC*, this Court found that a merger did not violate the parties' no-assignment clause. *Professional Buyer's Guild, LLC v. ACE Fire Underwriters Insurance Co.*, No. 06-2127, 2007 U.S. Dist. LEXIS 80143, at *10 (D.N.J. Oct. 30, 2007). The clause at issue in that case did not prohibit assignments by operation of law. *Id.* at *6. This Court pointed out that, under New Jersey law, a merger acts by operation of law, and thus concluded that because the contract rights in the case "passed by operation of law," the merger "did not violate the assignment provision." *Id.* at *10, 13-14. Thus, as implied by *Professional Buyer's Guild*, a merger may violate a no-assignment clause where a contract specifically prohibits assignments by operation of law.

Here, the Agreement specifically states that it "shall not be assigned by either party without first obtaining the written consent of the other party and *shall not be assignable or transferable by operation of law*." (Agreement ¶ 16 (emphasis added).) The Agreement was assigned by operation of law when DBA was acquired by Radiant as a wholly-owned subsidiary. *See* N.J. Stat. Ann. 14A:10-6(d). As DBA does not allege that it sought ASFS's consent in its acquisition by Radiant, it violated the terms of the Agreement. Consequently, DBA cannot (and does not) plead a necessary element of its breach of contract claim—performance of its own contractual obligations. *Frederico*, 507 F.3d at 203 (3d Cir. 2007). The Court therefore will dismiss DBA's breach of contract claim.

## B.    Breach of the Implied Covenant of Good Faith and Fair Dealing

DBA next claims that ASFS breached the implied covenant of good faith and fair dealing. New Jersey law imposes upon the parties to a contract a duty of good faith and fair

8

dealing. *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 224 (2005). "The covenant of good faith and fair dealing calls for parties to a contract to refrain from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive' the benefits of the contract." *Id.* at 224-25 (quoting *Palisades Props., Inc. v. Brunetti*, 44 N.J. 117, 130 (1965)). Proof of "bad motive or intention" is required because contract law does not require parties to act altruistically towards each other, and "decisions that happen to result in economic disadvantage to the other party are of no legal significance." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2001) (citations omitted).

Here, DBA's claim rests on the same facts underlying its breach of contract claim. DBA argues that ASFS breached the implied covenant of good faith and fair dealing when ASFS unilaterally terminated the Agreement and began working with SBA despite language requiring ASFS to continue performance until January 9, 2012. (Complaint ¶ 28). As an initial matter, the Court has already noted that the Agreement allows for termination by "either party in the event of a breach of any provision of the Agreement upon 30 days written notice to the other." (Agreement ¶ 11.) Thus, it is inaccurate for DBA to suggest that ASFS did not have any means grounded in the Agreement to terminate prior to January 9, 2012. More importantly, the Complaint is devoid of any facts, or even a conclusory legal statement, suggesting "bad motive or intention" on the part of ASFS. *See Wilson*, 168 N.J. at 251. As a result, DBA failed to state a claim for breach of the implied covenant of good faith and fair dealing.

## C.    Unjust Enrichment

DBA alleges that ASFS was unjustly enriched when it terminated the Agreement. To state a claim for unjust enrichment, a plaintiff must plead "both that defendant received a benefit

9

and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). The claim "requires that [a] plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.*

In this case, DBA's unjust enrichment claim rests on two factual allegations. First, DBA alleges that "[t]o the detriment of DBA, Defendants [sic] ASFS has attempted to terminate its Exclusive Agency Agreement in order to perform the same and/or similar freight delivery services for SBA." (Complaint ¶ 31.) This allegation is no different that DBA's breach of contract claim. But "it is generally the case that when a valid, express contract covers the subject matter of the parties' dispute, a plaintiff cannot recover under a quasi-contract theory such as unjust enrichment." *Ramon v. Budget Rent-A-Car Sys.*, No. 06-1905, 2007 U.S. Dist. LEXIS 11665, at *15 (D.N.J. February 20, 2007); *see also Moser v. Milner Hotels, Inc.*, 6 N.J. 278, 280 (1951). Therefore, DBA's allegation that ASFS breach the Agreement cannot serve as a basis for its unjust enrichment claim.

DBA's second factual allegation is that "ASFS caused DBA to secure a new cyber liability insurance policy on behalf of ASFS, costing in excess of $16,000, to perform its duties as an agent for DBA, and then attempted to terminate the Exclusive Agency Agreement less than thirty days later." (Complaint ¶ 33.) But the Complaint contains no facts that state whether the insurance policy is still in place or whether ASFS received benefits under the policy after termination of the Agreement. In other words, DBA has not stated a plausible claim that "retention of that benefit without payment would be unjust." *VRG Corp.*, 135 N.J. at 554 (1994). Consequently, DBA has failed to state a claim for unjust enrichment, and the claim will be dismissed.

10

### D.    Tortious Interference

DBA's last claims are tortious interference with a contract and tortious interference with a prospective economic benefit.  In its prayer for relief, DBA asks for judgment and damages "against Defendants," without distinguishing between ASFS and SBA.  However, because "it is 'fundamental' to a cause of action for tortious interference . . . that the claim be directed against defendants who are not parties to the relationship," the Court will consider the tortious interference claims only as directed against SBA.  *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 752 (1989).

To state a claim for tortious interference with a contract, DBA must allege (1) a protectable right (i.e., a contractual relationship); (2) interference with that protectable right, done intentionally and with malice; (3) the interference caused the loss; and (4) the interference caused damage.  *Printing Mart-Morristown*, 116 N.J. at 751.  To state a claim for tortious interference with a prospective economic benefit, DBA must allege (1) a prospective economic or contractual relationship or reasonable expectation thereof; (2) interference done intentionally and with malice; (3) interference caused the loss of the prospective gain; and (4) resulting damages.  *MacDougall v. Weichert*, 144 N.J. 380, 404 (1996); *Printing Mart-Morristown*, 116 N.J. at 751.

For purposes of both tortious interference actions, "malicious" means "that the harm was inflicted intentionally and without justification or excuse." *Id.* (quoting *Rainier's Dairies v. Raritan Valley Farms, Inc.*, 19 N.J. 552, 563 (1955)).  An allegation of ill will is not necessary. *Id.*  Instead, the proper inquiry is whether a defendant's "conduct was sanctioned by the 'rules of the game.'" *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 306 (2001).  Malice is absent if there is "a just and lawful excuse" for the conduct. *Middlesex Concrete Products & Excavation*

*Corp. v. Carteret Indus. Assoc.*, 37 N.J. 507, 517 (1962).  For example, it is not necessarily malicious for a defendant "to advance its own interest and financial position." *Cedar Ridge Trailer Sales, Inc. v. Nat'l Community Bank of New Jersey*, 711 A.2d 338, 345 (N.J. Super. Ct. App. Div. 1998).

Here, DBA states that its protectable right is the Agreement and the performance there under until January 9, 2012. (Complaint ¶ 37.)  However, the Court has determined that DBA did not have a contractual right or a prospective contractual right after it was acquired by Radiant.  Thus, DBA's claims of tortious interference fail on that basis alone.

Even if DBA did have an enforceable contract or prospective economic benefit, its tortious interference claims still fail.  The only factual allegation in the Complaint made with respect to SBA is that "ASFS has begun working with SBA," involving the movement of ASFS shipments through SBA's system. (Complaint ¶¶ 18, 19.)  DBA's legal conclusion, which the Court need not credit, *Baraka*, 481 F.3d at 195, is that SBA "knew" of the Agreement, but "intentionally and without justification interfered" with DBA's contractual rights or expected economic interest. (Complaint ¶¶ 38-39, 43-44.)  DBA's allegation that SBA knew of the Agreement is alone insufficient to give rise to a tortious interference claim. *See Matrix Essentials v. Cosmetic Gallery*, 870 F. Supp. 1237, 1246 (D.N.J. 1994).

Moreover, the Court cannot plausibly conclude malice from DBA's allegation that "ASFS has begun working with SBA." (*See* Complaint ¶ 19.)  There are simply no facts or conclusions in the Complaint that allege SBA's conduct was "both injurious and transgressive of generally accepted standards of common morality or law." *Lamorte Burns & Co.*, 167 N.J. at 306; *see also Digiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 2d 552, 565 (D.N.J. 2002) (listing allegations of "physical violence, misrepresentations, abuse of legal process, unlawful conduct,

12

or unwarranted economic pressure" as examples of malice in the context of tortious interference). As a result, the Court finds that DBA has failed to state a claim for tortious interference with a contract and tortious interference with a prospective economic benefit.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to state claims against ASFS of breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Further, the Court finds that Plaintiff has failed to state claims against SBA of tortious interference with a contract or tortious interference with a prospective economic benefit. Accordingly, the Court grants both ASFS's and SBA's Motions to Dismiss, and the Complaint is dismissed in its entirety. An appropriate order is filed herewith.

Dated:  March _13_ , 2012

_____
United States District Judge

13